NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MAXIM STROMBERG, as Personal Representative
of the Estate of DANNY RICH, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

TRACY HEIRIGS, an individual, *Defendant/Appellant/Cross-Appellee*.

No. 1 CA-CV 24-0150

FILED 07-14-2026

Appeal from the Superior Court in Coconino County
No. S0300CV201800576
The Honorable Elaine Fridlund-Horne, Judge, *Retired*
The Honorable Brent Davidson Harris, Judge *Pro Tempore, Retired*

**AFFIRMED**

APPEARANCES

Tracy Heirigs, Flagstaff
*Defendant/Appellant/Cross-Appellee*

Cheri L. McCracken, Attorney at Law, Phoenix
By Cheri L. McCracken
*Counsel for Plaintiff/Appellee/Cross-Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass joined.[1] Judge Andrew J. Becke dissented.

---

**B R O W N**, Judge:

**¶1**         Tracy Heirigs appeals the superior court's denial of her motion for new trial following a jury's verdict that no valid contract existed for the sale of a restaurant. Danny Rich cross-appeals several aspects of the court's ultimate judgment entered after post-trial proceedings.[2] For the following reasons, we affirm.

### BACKGROUND

**¶2**         Rich owned and operated Alpine Pizza, a restaurant located in Flagstaff, as a sole proprietorship starting around 1974. In 2017, he pled guilty to two felony offenses, which created a problem for the restaurant because the liquor license was due for renewal in May 2018.[3] In Arizona, a liquor license cannot be renewed for a person convicted of a felony offense in the five years preceding their application for such a license. A.R.S. § 4-202(D). By early 2018, Rich also began experiencing several health issues.

---

[1]     Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

[2]     While this appeal was pending, Rich passed away. For the ease of reference and consistency, we will continue to refer to him throughout the decision. Maxim Stromberg, as personal representative of Rich's estate, is now the plaintiff/cross-appellant in this matter.

[3]     The two convictions were set aside in 2020.

**¶3**          Heirigs, who owned a business next to Alpine Pizza, met Rich in March 2018, and the two developed a personal relationship. Heirigs gave Rich a book regarding natural healing and would accompany him to some of his medical appointments. Heirigs and Rich later agreed she would become involved with Alpine Pizza, though each of them seemed to have different understandings about what her involvement would look like.

**¶4**          According to Rich, his plan was to establish a limited liability company that would pass the restaurant on to his family, who would then become members of the company. He claimed he hired Heirigs to work as a bookkeeper for 90 days to help transfer the restaurant to the limited liability company and to manage its books. Rich intended Heirigs to be a part of the company to establish it but also contemplated they would later "bring in all the other members." Yet Heirigs believed that Rich would transfer his liquor license to a limited liability company she created, and then he would spend "approximately three months" looking for a buyer for the restaurant. In the meantime, she would be responsible for managing and running the restaurant. According to Heirigs, once Rich identified a buyer for Alpine Pizza that both she and Rich could agree upon, she would sell the restaurant to that buyer and would receive a portion of the purchase price or $30,000, whichever was greater.

**¶5**          In preparing for the agreement and to resolve the impending issue with the liquor license, on May 18, 2018, Rich and Heirigs met with an attorney who specializes in liquor licensing law. According to Heirigs, this attorney discussed the process of setting up a limited liability company and the process for transferring the license. She also claimed the attorney told her that Rich could not own more than ten percent of the company.[4]

**¶6**          One week later, Heirigs formed Alpine Pizza LLC ("the LLC"). The articles of organization listed Heirigs as the manager and sole member of the LLC. That same day, the LLC applied for a transfer of Rich's liquor license. The application included a bill of sale, signed by Rich, transferring the restaurant to the LLC for $10. The application also contained a section for listing the LLC's creditors and noted that the LLC owed Rich $250,000. Heirigs explained that this number reflected the minimum price Rich would accept for sale of the restaurant. She also claimed there was a promissory note for this same amount payable to Rich

---

[4]          At trial, Rich could not seem to remember details about meeting with this attorney, and the attorney himself testified he only vaguely recalled speaking with the parties about a case involving a felony.

when they sold the restaurant. Rich, conversely, testified he told Heirigs to put $500,000, but he did not notice she had written $250,000.

¶7            In the months following transfer of the restaurant and license to the LLC, the relationship between Rich and Heirigs deteriorated. She testified that despite their agreement to let her manage the restaurant, Rich was "continually meddling," constantly took money without permission, and was seemingly not searching for a buyer. Rich claimed he tried to fire Heirigs in September 2018, and then she changed the locks to the restaurant. That same month, an attorney working on Rich's behalf prepared a contract to "solve the problems between [the parties]," but Heirigs did not sign it.

¶8            Several weeks later Rich sued Heirigs and the LLC. He requested a declaratory judgment that no valid contract for the sale of the restaurant was formed because there was no consideration or meeting of the minds, or the contract was void based on illegality. Alternatively, Rich claimed both defendants breached any valid contract as well as the implied covenant of good faith and fair dealing ("implied covenant"). Rich also included claims for intentional and negligent misrepresentation, unjust enrichment, and violations of the Arizona Wage Act, *see* A.R.S. § 23-355, and the Adult Protective Services Act, *see* § 46-456. Heirigs counterclaimed for breach of contract, breach of the implied covenant, tortious interference, and quantum meruit.

¶9            At trial, Heirigs and Rich each testified about the events surrounding Heirigs's involvement with Alpine Pizza and their understandings of the terms of any agreement between them. The liquor license attorney testified that a person with a felony conviction (1) is statutorily barred from qualifying for a liquor license if the conviction occurred within the last five years, and (2) cannot have "10 percent or more of the outstanding debt of the transaction for the license."

¶10            In its verdict, the jury found there was no valid contract for the sale of Alpine Pizza to the LLC. *See* Appendix. Even so, the jury also found that both Rich and the LLC had violated the implied covenant. *Id.* The verdict form provided a line for the jurors to write the appropriate amount of damages if they found a breach of the implied covenant. *Id.* Rather than listing a number for monetary damages on that line, the jury wrote "See Reverse." *Id.* The jury then wrote a list of items on the reverse side of the verdict form, which included: (1) transferring ownership of the LLC and the liquor license to Rich, (2) transferring all of the LLC's debt "for restaurant operations & business," excluding unpaid legal fees, to Rich, and (3) splitting all LLC cash assets on the books evenly between Rich and

4

Heirigs. *Id.* The jury found the rest of the claims and counterclaims were not proven. *Id.* The record does not indicate that any objections to the verdict were raised before the court dismissed the jury.

¶11 After trial, the parties disputed the proper form of judgment. Following oral argument addressing how to fashion the judgment, the court ordered each party to submit an "updated form of order based on the parties' discussions" and provide "relevant numbers in regard to attorney's fees, debts, accruals[,] etc. within fifteen (15) Court days." Nothing in the record suggests either party objected to this procedure and neither party timely submitted a transcript of the oral argument to this court.

¶12 Heirigs submitted a "debt calculation document" that listed all the LLC's creditors, including the Internal Revenue Service, Arizona Department of Revenue, food vendors, and Heirigs herself. After she submitted her document, Rich submitted an analysis by a certified public accountant that analyzed and critiqued Heirigs's figures on several grounds, including that Heirigs had double counted certain expenses and failed to include a $200,000 loan that was later forgiven. That analysis concluded the LLC had no current debt.

¶13 After the parties submitted these documents, the court issued a judgment ("First Judgment"). The court ordered the same relief the jury wrote on the verdict form. The court then listed the LLC's creditors and amounts owed, including a total of $199,365 to Heirigs herself, which reflected the same amounts Heirigs provided in her debt calculation document. The court awarded costs to Rich as the "prevailing party," but declined to award attorney's fees to either party under A.R.S. § 12-341.0l(A), "since the purpose of awarding such fees, pursuant to A.R.S. §[]12-341.0l(B) is 'made to mitigate the burden of the expense of litigation to establish a just claim or a just defense.'"

¶14 Despite the court's express denial of each party's claim for attorneys' fees, Rich filed an application for attorney's fees, asserting he was "entitled" to such award as the prevailing party. Though the court ordered that the application would be treated as a motion for reconsideration, the record does not show the court ever ruled on the motion. Instead, and for reasons that are not evident from the record, a newly assigned superior court judge signed a different judgment ("Second Judgment"), provided by Rich, which included several portions of the form of judgment Rich had initially submitted after trial. The Second Judgment found there was no contract for sale of the restaurant, ordered the LLC to transfer the liquor license to Rich, and ordered an audit of the LLC to "ensure that only the

legal business debt be the responsibility of [] Rich." Additionally, and contrary to the First Judgment, the Second Judgment found that Rich was "entitled to attorney's fees," citing A.R.S. § 12-341.01.

¶15 Heirigs moved to vacate the Second Judgment, arguing the court had already entered the First Judgment. Heirigs emphasized that the First Judgment had denied Rich's request for fees. Rich filed a "petition" requesting about $250,000 in attorneys' fees and sought recovery of taxable costs. Several months after the parties filed these documents, the court entered another judgment ("Final Judgment"). The Final Judgment affirmed "all findings and orders" contained in the First Judgment and denied Rich's request for attorneys' fees but awarded him taxable costs totaling $14,662.39.

¶16 Heirigs moved for a new trial under Arizona Rule of Civil Procedure ("Rule") 59(a), arguing (1) Rich failed to sufficiently disclose the theory that a contract for sale of the restaurant which involved Rich owning the LLC's debt was illegal, (2) the jury's verdict was contrary to law, and (3) sufficient evidence existed to support the elements of a contract. The court denied the motion, stating that the facts in Heirigs's motion were "facts that were presented to the jury during the trial" and that the jury "rendered a decision based on th[at] evidence." Heirigs appealed and Rich cross-appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1), (5)(a).

## DISCUSSION

¶17 For her appeal, Heirigs challenges the superior court's denial of her motion for a new trial and the Final Judgment. For his cross-appeal, Rich challenges various aspects of the Final Judgment.

### A.  Heirigs's Appeal

¶18 Heirigs argues the court erred in denying her motion for new trial because Rich engaged in misconduct by failing to timely disclose a key legal theory before trial, and the evidence at trial could not have supported the jury's verdict. We review the denial of a motion for a new trial for an abuse of discretion. *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, 154, ¶ 10 (2016). "An abuse of discretion occurs when the ruling is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Paz v. City of Tucson*, 256 Ariz. 391, 398, ¶ 21 (App. 2023).

### 1.  Disclosure

**¶19**      Heirigs argues Rich failed to timely disclose the legal basis on which he would claim the contract between him and the LLC was void for illegality.  At trial, the liquor license attorney testified that under relevant liquor license statutes, an entity could not have a "controlling person" who had a felony conviction, and that a "controlling person" included an individual with ten percent or more ownership of the entity's liabilities. *See* A.R.S. §§ 4-101(10)–(11), -210(A)(8).  Rich argued to the jury that "any contract to sell Alpine Pizza with [] Rich carrying back the promissory note of whatever kind or a financial interest of whatever kind, was a void contract to start with.  That it was void as illegal."  Heirigs contends that Rich never put her on notice he would argue contractual illegality based on his ownership of the LLC's debt.

**¶20**      Heirigs, however, failed to object during trial to the attorney's testimony about liquor licensing statutes.  Instead, she raised the nondisclosure issue for the first time in her motion for new trial. Generally, a party's failure to raise a timely objection during trial for lack of disclosure, even when the party includes the issue in a motion for new trial, waives the right to challenge the issue on appeal. *See Ritchie v. Krasner*, 221 Ariz. 288, 303, ¶ 51 (App. 2009); *Conant v. Whitney*, 190 Ariz. 290, 293 (App. 1997).  As a result, Heirigs has waived any argument that the court erred in denying her motion for new trial based on her lack of disclosure argument.

### 2.  Insufficient Evidence Supporting Jury's Finding

**¶21**      Heirigs also argues the evidence at trial did not support the jury's finding that no contract existed for the sale of the restaurant to the LLC.  "We view the evidence in the light most favorable to sustaining a jury verdict and will affirm if there is substantial evidence to support it." *Benedict v. Total Transit Inc.*, 252 Ariz. 151, 160, ¶ 26 (App. 2021).

**¶22**      Primarily, Heirigs relies on the fact that Rich acknowledged at trial that he and Heirigs had an agreement to sell the business.  But the mere acknowledgment that there was some kind of agreement between him and Heirigs does not conclusively establish the existence of an enforceable contract.  "It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms," and that "[a] distinct intent common to both parties must exist *without doubt or difference*, and until all understand alike there can be no assent." *Hill-Shafer P'ship v. Chilson Fam. Tr.*, 165 Ariz. 469, 473 (1990) (emphasis added).  Though both Rich and Heirigs believed there was some type of agreement between them,

each party's understanding as to the terms of that agreement differed sharply. *Supra* ¶ 4. Contrary to Heirigs's suggestion, the jury could reasonably conclude that Rich's testimony did not reflect that he and Heirigs had a "meeting of the minds" sufficient to establish a legally cognizable contract. *See Hill-Shafer P'ship*, 165 Ariz. at 473 ("If one party thinks he is buying one thing and the other party thinks he is selling another thing, no meeting of the minds occurs, and no contract is formed.").

### 3. Costs and Final Judgment

**¶23** Heirigs also argues the court erred in determining Rich was the prevailing party and thus entitled to attorneys' fees. But the superior court did not award attorneys' fees; the court only awarded Rich his taxable costs. To the extent Heirigs seeks to challenge the award of costs, she has not persuaded us the court abused its discretion. Under A.R.S. § 12-341, the "successful party to a civil action shall recover from his adversary all costs expended or incurred therein," and the superior court has substantial discretion in determining who is the "successful party." *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 223, ¶ 32 (App. 2012). Though Rich did not prevail on all, or even most, of his claims, the jury returned a verdict in his favor for his claim of declaratory relief and in part for breach of the implied covenant. Critically, the verdict in this matter resulted in Rich retaining ownership of the restaurant and obtaining the liquor license, which was at the center of this dispute. On this record, Heirigs has not shown the court abused its discretion in awarding costs to Rich.

**¶24** Finally, Heirigs argues the court failed to include details about the "sale of the LLC" in its final judgment. Though she suggests it "is prudent and necessary in this case to help the [p]arties work through the particulars surrounding the upcoming sale," she cites no legal authority requiring the court to make such provisions. Accordingly, she has failed to demonstrate an abuse of discretion.

### B. Rich's Cross-Appeal

**¶25** Rich cross-appeals several aspects of the Final Judgment he believes are improper. To the extent we may characterize the court's judgment as awarding equitable relief, we review the judgment for an abuse of discretion. *See Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 210, ¶ 8 (App. 2010) ("Fashioning an equitable remedy is within the trial court's discretion, and it will not be disturbed on appeal absent an abuse thereof.").

## 1.    Challenges to the Jury's Verdict

**¶26**    Rich argues that much of the court's judgment cannot stand because the relief ordered arises out of the jury's finding on the claim for breach of the implied covenant.  According to Rich, that finding is contradicted by the jury also finding that no contract existed between the parties.  He thus contends that the determination regarding the non-existence of a contract eliminated any relief stemming from breach of the implied covenant.

**¶27**    Rich is correct that the jury's verdicts are inherently inconsistent; a party cannot maintain a claim for breach of the implied covenant when there is no contract.  *See Norman v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 196, 198, ¶ 1 (App. 2001) (reiterating "the well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract").  Thus, those provisions of the jury's verdict are contradictory.  But Rich waived his right to challenge this issue on appeal because he failed to timely request that the court resubmit the verdict to the jury.  *See Benedict*, 252 Ariz. at 161–62, ¶ 35 ("A party who believes a verdict is defective or nonresponsive must move to have the case resubmitted to the jury to preserve the issue for appeal."); *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 543, ¶¶ 38–39 (App. 2002) (explaining that a party must object when the verdict is rendered if the party believes the verdict is inconsistent).  "Requiring the party to object to defective verdicts at trial provides the court with an opportunity to correct the error with minimal effort and expense, and aids the just and efficient operation of the . . . courts." *Trustmark Ins. Co.*, 202 Ariz. at 543, ¶ 40 (citations and quotations omitted).

**¶28**    Similarly, Rich takes issue with the portion of the court's judgment finding that the debts of the LLC are personal to him.  Again, Rich is correct that members of a limited liability company are not personally liable for company debts.  *See* A.R.S. § 29-3304(A).  But the court's finding on that point flows directly from the jury's verdict, which provided for transfer of *all* the LLC debt to Rich.  He had the opportunity to raise this issue before the jury was dismissed but failed to do so.  Accordingly, his argument is waived.  *See Benedict*, 252 Ariz. at 161–62, ¶ 35.

**¶29**    Our dissenting colleague believes the verdicts should have been rectified under Rule 49, and that we should reverse and remand for a new trial regardless of waiver.  Had Rich made this argument in either the superior court or in his briefing on appeal, it may have been compelling.  But he failed to do so.  We likewise disagree that eschewing waiver is

appropriate here. There is no reason apparent from the record, and Rich does not offer any explanation on appeal, why he could not have asked the court to take appropriate steps to address the verdict's inconsistencies before the trial concluded. Granting him relief on appeal in spite of that failure would contravene the rationale for applying waiver when a party fails to object in a timely manner. *See Trustmark Ins. Co.*, 202 Ariz. at 543, ¶ 40.

¶30 Even so, we share the dissent's frustration with the verdict in this case. In addition to the obvious contradiction in the jury's verdict that a contract did not exist and yet somehow was still breached, there is no reasonable explanation why the jury was permitted to effectively award equitable relief for a contract claim. The parties and the court could have, and should have, attempted to rectify these issues before discharging the jury. Because that did not occur, we do not believe it is proper to order a new trial.

## 2. Accounting of Debts

¶31 Rich next argues the court deprived him of due process through the method it used to determine the LLC's debts in the Final Judgment. He believes the court's request that the parties submit documentation showing the LLC's "attorney's fees, debts, and accruals" did not give him a meaningful opportunity to contest Heirigs's calculation of the LLC's debts. Because there was no opportunity to present his own evidence or attack the credibility of Heirigs's figures, he argues he never received a "meaningful opportunity to be heard."

¶32 As noted, *supra* ¶ 12, Rich's accountant was able to review Heirigs's filing and point out what the accountant believed was wrong with Heirigs's figures. And similar to Rich's argument on the jury's verdict, the record does not show that Rich objected to this procedure before entry of the First Judgment. It was only after the court adopted Heirigs's figures that Rich believed the process was unfair. Though Rich raised various arguments challenging the court's procedure in his motion for reconsideration, it was insufficient to preserve the issue for appeal. *See Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 239, ¶ 16 (App. 2018) ("Generally, arguments raised for the first time in a motion for reconsideration are not preserved for appeal."). Rich has waived his due process argument.

### 3.  Alleged Errors in Calculating LLC Debt

¶33       Rich makes several arguments related to the Final Judgment regarding alleged errors in Heirigs's debt calculations which the court adopted.  He contends that Heirigs: (1) failed to include a $200,000 loan (which was later forgiven) for the LLC in her profit and loss statements, (2) double counted expenses for rent paid to Rich, and (3) included debts incurred after Heirigs stopped operating the restaurant and expenses unrelated to operation of the restaurant.  He also claims the judgment erroneously included Heirigs's legal fees as part of the LLC's debt calculation.

¶34       Rich has not persuaded us that the court abused its discretion in accepting Heirigs's debt figures.  Though Rich argues that Heirigs included numerous expenses incurred after he resumed operation of the restaurant, her debt calculation document does not reflect such an error.  Instead, it includes a list of payments she made on liabilities associated with the restaurant and ongoing litigation.  Similarly, Rich argues that several expenses, including legal fees, travel expenses, and cell phone bills, fall outside the jury's award of debt related to "restaurant business and operation."  But Rich provides no justification for reversal other than his own assertion that such expenses went beyond the jury's verdict and were unrelated to the business and operation.  To the contrary, at least regarding the LLC's legal debts, the jury specifically excluded *unpaid* legal fees.  Thus, the verdict confirms the jury intended for Rich to assume the LLC's *paid* legal expenses.  On this record, we cannot say the court abused its discretion by including these debts in the Final Judgment.

¶35       As to Rich's argument about the $200,000 loan, he does not explain with reasonable clarity how the court erred by failing to deduct the amount from the LLC's outstanding debt.  Rich emphasizes that Heirigs admitted at trial to receiving the loan and its subsequent forgiveness, but she also testified she used those funds to cover business expenses.  Rich's briefing, however, cites only Heirigs's testimony about receiving the loan, Heirigs's debt calculation document, and his accountant's analysis of the same.  Rich claims the "numbers provided by Heirigs were so deeply flawed it was clear error to accept them," but cites only generally to the documents he and Heirigs filed regarding the LLC's debts; he provides no other reference to the evidence regarding the LLC's financial documents or anything else in the record to demonstrate why the court's acceptance of Heirigs's debt figures was clearly erroneous or an abuse of discretion.  *See Adams v. Valley Nat. Bank of Ariz.*, 139 Ariz. 340, 343 (App. 1984) ("We are not required to assume the duties of an advocate and search voluminous

11

records and exhibits to substantiate an appellant's claims."). Rich's claim that Heirigs double counted rent expenses suffers a similar deficiency.

¶36        We also note that nothing in the record suggests Rich requested an evidentiary hearing on the question of the LLC's debts before the court's First Judgment.  Moreover, Rich presented these arguments to the court in his response to Heirigs's debt calculation document.  To the extent his arguments ask us to re-evaluate his documentation of the LLC's finances against Heirigs's submittal, without sufficiently demonstrating how her calculations were clearly erroneous, we decline to do so.  *See Godwin v. Farmers Ins. Co. of Am.*, 129 Ariz. 416, 419 (App. 1981).

### 4.        Additional Equitable Relief

¶37        Rich contends the Final Judgment fails to appropriately facilitate the transfer of the LLC, specifically regarding the LLC's tangible and intangible assets.  But Rich shows nothing from the record indicating the LLC has such assets, nor any authority requiring the court to issue such orders.    Similarly, Rich argues the court should have granted him additional equitable relief, including restitution and disgorgement.  Since we have rejected his arguments on that issue, we likewise reject the notion he is entitled to other equitable relief.

### 5.        Attorneys' Fees

¶38        Lastly, Rich argues the superior court erred by not awarding him attorneys' fees as part of the Final Judgment.[5]  He first argues the First Judgment on this matter was "premature and unripe" because the judgment did not provide him with 20 days to file his motion for attorneys' fees under Rule 54(g)(2).  Not so.  Rule 54(g)(2) applies only "[i]f a decision adjudicates all claims and liabilities of all of the parties, *except a claim for attorney's fees*, and judgment is to be entered under Rule 54(c)." (Emphasis

---

[5]        Rich asserts that the Second Judgment, which awarded him fees, "has never been removed or rescinded," and we should order that the Second Judgment be reinstated.  But the Final Judgment superseded the Second Judgment by adopting "all findings and orders" issued in the First Judgment.  The court retained the inherent authority to modify the non-final judgment, *Preston v. Denkins*, 94 Ariz. 214, 219 (1963), and Rich cites nothing to the contrary.  The Second Judgment was not final because it had not resolved the issue of attorneys' fees.  *See* Rule 54(h)(1)(A) (noting that "claims for attorney's fees and costs must be resolved before any judgment may be entered under Rule 54(b) or (c)").

added.)  The First Judgment made it clear that neither party was entitled to attorneys' fees so there was no remaining claim of attorney's fees.  And Rich cites no authority, or any reasonable argument, suggesting that a party may properly submit a fee application after a court expressly declines to award attorneys' fees to any party under § 12-341.01(A).

¶39          Substantively, Rich also contends that under § 12-341.01(A), "[a]s a prevailing party, [he] is *entitled* to an award of fees."  Not so.  Section 12-341.01(A) states, "[i]n any contested action arising out of a contract, express or implied, the court *may* award the successful party reasonable attorney fees." (Emphasis added).  The legislature's use of the "may award" language demonstrates that an award of fees under this statute is discretionary.  *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985).  Accordingly, we will affirm a court's decision under § 12-341.01 if any reasonable basis supports the court's determination. *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195 (App. 1994).

¶40          The factors used to determine whether to award fees under § 12-341.01 include whether "[t]he successful party did not prevail with respect to all of the relief sought." *Associated Indem. Corp.*, 143 Ariz. at 570.  Rich prevailed on his claims for declaratory judgment and breach of the implied covenant.  But the jury rejected his remaining claims.  Regardless of whether other factors weighed in Rich's favor, the court had a reasonable basis to deny his request for attorneys' fees. *See Tucson Ests. Prop. Owners Ass'n, Inc. v. McGovern*, 239 Ariz. 52, 56, ¶ 14 (App. 2016).

## CONCLUSION

¶41          We affirm.  Given that Rich has not prevailed on any issue raised in his cross-appeal, in our discretion we deny his request for attorneys' fees incurred on appeal under A.R.S. § 12-341.01.  Likewise, because neither party prevailed on their respective arguments presented in the appeal and cross-appeal, we decline to award taxable costs to either party.

**B E C K E,** Judge, dissenting:

¶42          Admirably, the majority makes every effort to respect and uphold the jury's verdicts in this case. But because the verdict on Rich's claim for the breach of the covenant of good faith and fair dealing ("Breach

of the Covenant") was simply too defective to justly implement, I believe the judgment entered is unsalvageable and must be set aside. I respectfully dissent.

**¶43**      As the Appendix to this decision shows, the jury entered verdicts in the Defendants' favor on Rich's claims for fraud/intentional misrepresentation (#4 on the verdict form), unjust enrichment[6] (#5), exploitation of a vulnerable adult[7] (#6), and punitive damages (#7). The jury entered a verdict in Rich's favor on Defendants' counterclaim for tortious interference with contractual relations (#8). The problems arise with the first three entries on the verdict form pertaining to Rich's claims for breach of contract and for Breach of the Covenant. Because the only justification for the jury's "action items" was the jury's purported verdict on the fatally flawed Breach of the Covenant claim, the judgment must be set aside.

**¶44**      As the majority acknowledges, the responses from the jury are inconsistent. The jury found that there was no valid contract for sale of the restaurant (#1) and that the nonexistent contract was not breached (#2), but also found that Rich and Alpine Pizza LLC breached the implied covenant of good faith and fair dealing contained within that nonexistent contract (#3). That contradiction violates "the well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract." *Norman v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 196, 198, ¶ 1 (App. 2001). The question is what we do with that contradiction. Arizona Rule of Civil Procedure 49 provides the answer. And under the facts of this case, the answer can only be to order a new trial.

## I.      Rule 49 Requires a New Trial on These Facts.

**¶45**      Rule 49 governs verdicts and provides different instructions to the court depending on the type of verdict rendered by the jury. The Sixth Circuit Court of Appeals recently grappled with a similar issue in applying

---

[6] Unjust enrichment is an equitable claim, *Span v. Maricopa Cnty. Treasurer*, 246 Ariz. 222, 227, ¶ 15 (App. 2019), so—absent the parties' consent, which was not given here—the jury's verdict on that claim is advisory only. *See* Ariz. R. Civ. P. 39(d), 49(c).

[7] Like the unjust enrichment claim, this was an advisory verdict; claims under the Adult Protective Services Act are decided by the court, not the jury. *In re Estate of Newman*, 219 Ariz. 260, 272–73, ¶¶ 45-47 (App. 2008).

Federal Rule of Civil Procedure 49. *Debity v. Monroe Cnty. Bd. of Educ.*, 134 F.4th 389, 398 (6th Cir. 2025). The relevant parts of the federal Rule 49 are identical to the Arizona rule, and so we treat interpretations of the federal rule as persuasive in interpreting the Arizona rule. *See Flynn v. Campbell*, 243 Ariz. 76, 80, ¶ 9 (2017).

**¶46**　　　　"The Federal Rules of Civil Procedure intuit three types of verdicts: general verdicts, special verdicts, and general verdicts with interrogatories. Each iteration gives the judge distinct responsibilities." *Debity*, 134 F.4th at 398. "General verdicts 'simply ask the jury' to say who wins, and if it's the plaintiff, to say how much she gets." *Id.* (quoting *Turyna v. Martam Constr. Co., Inc.*, 83 F.3d 178, 181 (7th Cir. 1996)). In contrast, "[s]pecial verdicts ask the jury for 'special written finding[s] on each issue of fact' submitted to it." *Id.* at 399 (quoting Fed. R. Civ. P. 49(a)). "If the court asks the jury for special verdicts, then it becomes the role of the court to decide whether there is liability, which it does by applying the law to the jury's factual findings." *Id.* And finally, a "general verdict with interrogatories combines a general verdict with factual questions that would, standing alone, be special verdicts." *Id.* at 400.

**¶47**　　　　"In sum, a court asks for a general verdict when it asks the jury to declare the ultimate result of a claim." *Id.* "A court asks a jury to find a special verdict or interrogatory in scenarios short of that, like when the court poses questions of evidentiary or ultimate fact. And when a judge asks for a general verdict and answers to questions, we call these questions interrogatories." *Id.*

**¶48**　　　　Although not a model of clarity, I believe the verdict form asked the jurors to render general verdicts with a single answer to a factual question on Rich's claims for breach of contract and for Breach of the Covenant. Questions #2 and #3 on the verdict form were general verdicts; they asked the jury to "say who wins" and what damages were to be awarded. *See id.* at 400-01 (finding a general verdict where the jury was asked "to award damages, '[i]f your verdict is for the Plaintiff on either her discrimination or her retaliation claim'").

**¶49**　　　　Question #1, on the other hand, was a factual question on an "ultimate fact": was there a valid contract to begin with? And the answer to that question compelled a result in Rich's favor on the general verdicts set forth in questions #2 and #3. As such, this verdict should be analyzed under Rule 49(b), Ariz. R. Civ. P., which states in relevant part:

**(b) General Verdict with Answers to Written Questions.**

(1) *Generally*. The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide. The court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both.

. . . .

(3) *Answers Inconsistent with the Verdict*. If the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:

(A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;

(B) direct the jury to further consider its answers and verdict; or

(C) order a new trial.

**¶50**      The sole "answer" the jury provided was that there was no valid contract, so there are no other answers with which this answer could be inconsistent. That answer is consistent with the general verdict in favor of Defendants on the breach of contract claim. But that answer is inconsistent with the jury's general verdict finding that Defendant Alpine Pizza LLC had breached the covenant of good faith and fair dealing. Under Rule 49(b)(3), the superior court had only three options: (1) entry of judgment according to the answer (which would negate the Breach of the Covenant verdict), (2) directing the jury to further consider (obviously, no longer an option), or (3) ordering a new trial.

**¶51**      The court chose none of these three options. Instead, it did something Rule 49(b)(3) does not permit: it upheld the general verdict and disregarded the inconsistent answer. And because the court entered a judgment contrary to the jury's answer to the factual question, and because the jury's "action items" were beyond its power to award on that claim, I do not believe the failure to object waives this issue.

## II. We Can—and on These Facts, Should—Decline to Apply Waiver.

¶52 The Majority correctly notes that a failure to object to a defective verdict before the jury is discharged typically waives that issue on appeal. *See Benedict v. Total Transit Inc.*, 252 Ariz. 151, 161–62, ¶ 35 (App. 2021); *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 543, ¶¶ 38–39 (App. 2002). "Arizona appellate courts have the discretion to hear arguments first raised on appeal, [but] we rarely exercise that discretion." *Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007). This is one of those rare cases where we should do so.

¶53 The first reason is set forth above. The superior court had three options in response to the verdict rendered, but the court instead chose an unavailable option: to disregard the jury's factual finding and render a verdict in direct opposition to that finding. "Although it may be true as a general proposition that trial courts have inherent authority to enter orders that facilitate the orderly and efficient execution of their jurisdiction," *Bergeron ex rel. Perez v. O'Neil*, 205 Ariz. 640, 649, ¶ 27 (App. 2003), "the supreme court has been given the exclusive power to make rules relative to all procedural matters in any court." *Id.* Our supreme court has done so here by promulgating Rule 49. The superior court is without the power to simply disregard the commands of Rule 49 and fashion "remedial orders of its own creation." *Id.* at 650, ¶ 29; *accord State v. Superior Court,* 102 Ariz. 388, 392 (1967) ("The lower courts of this state are bound by law to follow the rules promulgated by the Supreme Court.")

¶54 The second reason is that the verdict rendered by the jury was simply beyond its power to order. The "action items" written by the jury on the back of the verdict form are not damages; they are equitable remedies. And equitable remedies are ordered by the court, not by the jury. *Caruthers v. Underhill*, 235 Ariz. 1, 8, ¶ 31 (App. 2014) ("[E]quitable remedies are for the court to decide."); s*ee also In re Estate of Newman*, 219 Ariz. 260, 273, ¶ 53 (App. 2008) ("[N]o constitutional right to a jury trial exists for actions that were considered equitable at or near the time Arizona's constitution was adopted."); *Henry v. Mayer*, 6 Ariz. 103, 114 (Ariz. Terr. 1898) ("[T]he cause being one of equitable jurisdiction, the court below was not bound to submit any issue of fact to a jury.").

¶55 "Ordinarily, a party claiming breach of an implied covenant of good faith and fair dealing is limited to *contract damages*." *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 76, ¶ 14 (App. 1998) (emphasis added); *see* Restatement (Second) of Contracts § 347 (1981) (setting forth the measure of contract damages). Transfers of ownership interests in LLCs

and shifting responsibility for paying debts are not "contract damages" within any meaning of those terms.

¶56        The jury here purported to award equitable remedies it had no power to award, giving remedies that were unavailable on a claim that itself was foreclosed by the jury's factual findings. The verdict here is not merely defective or inconsistent, it is so flawed as to be a nullity. Because I believe there is no legally supportable mechanism to implement the jury's verdict, I would vacate the judgment and remand for a new trial. For that reason, I respectfully dissent.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR

## APPENDIX

We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oaths, do find:

1. There ____ was _X_ was not a valid contract for sale of Alpine Pizza to Defendant Alpine Pizza, LLC. If a contract is found, we find the terms to be:

   a. _____

   _____

   _____

2. If there was a contract for sale, and it was breached by _N/A_ Plaintiff and/or _N/A_ Defendant Heirigs and/or _N/A_ Defendant Alpine Pizza, LLC. The damages for the breach are: $ _O._ .

3. On Plaintiff's claim of the implied covenant of good faith and fair dealings was breached by:

   a. _____ neither party and/or
   b. _X_ Plaintiff and/or
   c. _____ Defendant Heirigs and/or
   d. _X_ Defendant Alpine Pizza LLC
   e. If a breach occurred, damages are $ _SEE REVERSE_ .

4. On Plaintiff's claim for fraud/intentional misrepresentation , we find that Defendant Heirig _____ is _X_ is not liable for damages and if liable for damages, those damages are $ _O._ .

5. On Plaintiff's claim of unjust enrichment, we find _____ Defendant Heirig and/or _____ Defendant Alpine Pizza LLC was unjustly enriched at Plaintiff's expense; the damages are $ _O._ .

6. On Plaintiff's claim for exploitation of a vulnerable adult, we find that Plaintiff _____ was _X_ was not a vulnerable adult. If we find that Plaintiff was a vulnerable adult, then we find for the _____ Plaintiff or we find _____ Defendant Heirig and/or _____ Defendant Alpine Pizza LLC _____ is _____ is not liable for damages of $_____ .

7. On the claim for punitive damages, _X_ neither Defendant or ____ Defendant Heirigs and/or ____ Defendant Alpine Pizza, LLC is liable for damages of $ _O._ .

8. On Defendants' counterclaims of tortious interference with contractional relations, Plaintiff ____ did or _X_ did not interfere with Defendants' contractual relations. If Plaintiff interfered with Defendants' contractual relations, the damages are $ _O._ .

9. We find that there was ____ was not _X_ a distribution of funds to Defendant Heirigs from Alpine Pizza LLC after _N/A_ date in an amount of $ _O._ .

1. TRANSFER OF OWNERSHIP IN "ALPINE ^Pizza LLC" LLC TO PLANTIF

2. TRANSFER OF LIQUOR LIC. TO PLANTIF

3. TRANSFER OF ALL ALPINE PIZZA LLC DEBT FOR RESTARAUNT OPERATIONS & BUSINESS TO PLANTIF, EXCLUDING UNPAID LEGAL FEES.

4. ALPINE PIZZA LLC CASH ASSETS ON THE BOOKS TODAY TO BE SPLIT 50/50 BETWEEN BOTH THE PLANTIF AND DEFENDANT